Filed 7/30/26  In re Delilah Z. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Delilah Z., a Person Coming Under the Juvenile Court Law. | B349344<br><br>(Los Angeles County Super. Ct. No. 25CCJP01360A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>RICARDO Z.,<br><br>　　　Defendant and Appellant. | |

　　　APPEAL from orders of the Superior Court of Los Angeles County, Stephen Marpet, Juvenile Court Referee.  Affirmed.

　　　Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Jacklyn Louie, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

——————————————

The juvenile court asserted dependency jurisdiction over two-year-old Delilah Z., removed her from her mother's custody, and released her to Ricardo Z. (father), under the supervision of the Los Angeles County Department of Children and Family Services (DCFS). Father challenges the juvenile court's jurisdictional order to the extent it was based on his conduct. He also challenges the court's disposition orders requiring him to engage in certain family maintenance services. He does not argue that mother's conduct was an insufficient basis for dependency jurisdiction. Although father's jurisdictional argument is moot, we exercise our discretion to consider it. However, we find no error in the court's orders and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In April 2025, DCFS received a referral about the family and opened an investigation. Mother was reportedly behaving oddly, speaking in gibberish, and had been missing from work for two weeks. Friends, relatives, and Delilah's former babysitter—a paternal cousin—observed that mother appeared to have trouble caring for Delilah. Mother was at times overwhelmed, anxious, and impatient with Delilah. The former babysitter said mother went days without giving Delilah a bath and may not have been feeding her enough. Mother had recently called the babysitter "crying and not making any sense." When the babysitter arrived to pick up Delilah at mother's request, the house was strewn with trash and food. Delilah was not wearing a diaper. Mother said

2

she could not take care of Delilah and was afraid DCFS was coming.

Father said mother generally could take care of Delilah, but "at times, it is hard for mother to take care of herself and the baby, and that is when he steps in." Father denied using drugs and said he drank alcohol only occasionally. He declined to drug test.

While DCFS was investigating, the parents had an altercation that resulted in father calling law enforcement. Mother said father came home late and "tipsy." He "[did] not get tipsy easily." Father was verbally aggressive with mother but was not screaming. According to mother, law enforcement told her to leave with Delilah so that father could sober up.

After this incident, a social worker asked father to submit to an on-demand drug test. He did not show up for the test. He later told a social worker he planned to enroll in a treatment program for alcohol. A paternal cousin told DCFS that both parents were formerly heavy drinkers, although they now drank less. Mother told the cousin that father sometimes did not come home, "which probably made mother's anxiety worse."

DCFS filed a petition alleging dependency jurisdiction was warranted under Welfare and Institutions Code section 300, subdivisions (a) and (b), due to the parents' altercation when father was intoxicated and mother's mental and emotional problems.[1] At the initial hearing, the juvenile court detained Delilah from mother, but released her to father.

---

[1] All further statutory references are to the Welfare and Institutions Code. Father challenged the section 300, subdivision (a) count in a motion "akin to [a] demurrer." DCFS later moved to dismiss that count.

In an interview with DCFS for the jurisdiction and disposition report, father admitted that he sold cocaine in the past and was arrested in or around 2015 for drug trafficking. He said he had learned his lesson from the experience. However, in early June 2025, he tested positive for cocaine. In late June, he failed to submit to a drug test, explaining that he was sick.

DCFS received the positive drug test results in early July 2025. Father denied intentionally using cocaine. He said he had gone to Bakersfield to visit the paternal grandparents. While there, he left Delilah with his parents and met up with former coworkers. He and the coworkers "were all vaping" what father believed was nicotine. He denied knowing the substance was cocaine. He acknowledged "it looks bad," but claimed it was an isolated incident that would not reoccur. He insisted the positive test was an accident and he could not test in late June because he was sick. Father asked the paternal grandparents to care for Delilah and said he would immediately enroll in a substance abuse program.

DCFS filed an amended petition and obtained an order authorizing the agency to remove Delilah from father. The amended petition added a count alleging that father had unresolved substance abuse problems which rendered him incapable of providing regular care for Delilah.

In a further interview, mother said she was not aware of father using drugs. He did, however, have a problem with alcohol. Father at times did not return home and stayed out drinking with friends for up to two days. Other times, father returned home drunk after work. Although this was not a daily occurrence, it happened frequently enough that mother asked father to stop drinking. Mother had not suspected father of using

drugs, but she sometimes noticed that father had glassy eyes, looked sick or like he had not slept for a while, or was skinny and not eating properly. Father always denied drug use.

Father continued to insist that his positive drug test was unintentional as he had not known his friend's vape pen contained cocaine. His drug trafficking case was over nine years earlier. Father had enrolled in a substance abuse program and was attending AA meetings once a week. He was willing to submit to weekly and on-demand drug testing. DCFS confirmed father's participation in the program. He tested negative for substances several times in July and the beginning of August. Although DCFS remained concerned about father's substance abuse, the agency recommended that Delilah return to father's care since he had enrolled in a treatment program, moved in with his parents in Bakersfield, and was testing negative for drugs and alcohol.

The juvenile court sustained two counts of the amended petition. The court dismissed a count based on the April 2025 altercation between the parents. It found true counts based on mother's mental and emotional problems and father's substance abuse.[2] The court removed Delilah from mother's custody and

---

[2] The count as to father alleged that father "has a history of substance abuse and is a user of Cocaine and Alcohol. Further, [father] has a criminal history of conviction(s) of drug-related offenses, including drug trafficking of cocaine. Further, [father's] substance abuse problems remain unresolved which render father . . . incapable of providing regular care, protection and support for [Delilah]. [Father's] use of illicit drugs endangers the [child's] physical and emotional health and safety and creates a detrimental home environment, placing the [child] at risk of physical and emotional harm and damage."

released her to father. The court ordered family maintenance services for father, including individual counseling to address substance abuse issues. Father was also ordered to submit to random drug and alcohol testing for 90 days. If, after 90 days, he had no positive, unexcused, or missed tests, he would not have to test unless DCFS suspected he was under the influence and asked him to test on demand.

The court subsequently transferred the case to Kern County. Father timely appealed the jurisdiction and disposition orders.

## DISCUSSION

### I. Substantial Evidence Supported the Juvenile Court's Jurisdictional Order as it Relates to Father

#### A. Mootness

The juvenile court found Delilah to be a person described by section 300 based on mother's conduct as well as father's. On appeal, father does not challenge the jurisdictional findings related to mother's conduct. DCFS thus contends that father's appeal of the jurisdictional findings is not justiciable.

It is well established that the juvenile court may assert dependency jurisdiction over a child based on the conduct of only one parent. (*In re J.C.* (2014) 233 Cal.App.4th 1, 3.) We therefore agree with DCFS that even if the juvenile court erred in finding true the allegations about father, we would not reverse the jurisdictional order. In addition, Delilah was placed in father's custody at disposition and, with or without sustained jurisdictional findings as to father, the juvenile court was authorized to order father to participate in any services necessary to ensure Delilah's safety. (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1148 (*D.L.*).) Father has not identified any relief this court

6

can provide that will have a practical, tangible impact on his legal status. (*In re D.P.* (2023) 14 Cal.5th 266, 277 (*D.P.*).)

Nevertheless, we exercise our discretion to consider the merits of father's appeal of the jurisdictional order. Father was only named in the count of the petition related to him. Had the court not found the count true, it may have considered other orders at disposition, such as immediately terminating dependency jurisdiction with a juvenile custody order. Additionally, the challenged dispositional orders are related to the jurisdictional findings, even though the court could have issued the orders without the findings. We therefore find it appropriate to exercise our discretion in this case. (*D.P.*, *supra*, 14 Cal.5th at p. 286.)

## B.    Discussion

Section 300, subdivision (b), authorizes dependency jurisdiction when a parent's substance abuse—the excessive use of drugs or alcohol—renders the parent unable to regularly care for a child. (*In re N.R.* (2023) 15 Cal.5th 520, 540.) "The finding of dependency cannot be based on substance abuse alone; jurisdiction requires a substantial risk of harm to the child arising from the substance abuse." (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046.) We review a juvenile court's jurisdictional findings for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Here, substantial evidence supported the juvenile court's findings that father's substance abuse was unresolved and that it created a substantial risk of harm to Delilah. Father initially denied any drug use and asserted he drank alcohol only occasionally. Later events demonstrated these statements to be untrue. Despite the ongoing investigation, father tested positive

7

for cocaine while Delilah was released to him. While father contended this was an accident, the juvenile court could disbelieve father based on other evidence in the record. Father admitted he had previously sold cocaine. He met up with "former coworkers" and vaped with them. The juvenile court could reasonably find it unlikely that father accidentally or unknowingly used cocaine in the situation he described.

Although the paternal grandparents were babysitting Delilah while father was with his former coworkers, they returned her to father on June 8. Father tested positive for cocaine on June 9, suggesting he was under the influence while Delilah was in his care. Father then missed his next drug test. Mother described father's appearance as at times suggesting drug use, although she never found substances in his clothing. These circumstances created an inference that father's use of substances was not limited to alcohol.

However, even if father's drug use alone was not sufficient to support a jurisdictional finding, father's alcohol abuse was. Mother and relatives described father's heavy drinking. Mother indicated father sometimes did not return home for two days when he was out drinking, and he returned home drunk frequently enough that she asked him to stop drinking. Father continued drinking heavily even after DCFS had opened an investigation. Father admitted that one night in April 2025, he came home, drank six to eight beers, and began berating mother, all while Delilah was in the home. Mother later explained that father was "cursing her out in front of Delilah." Although father was not physically aggressive, "throughout the argument [mother] never reached out to get Delilah from his arms to avoid escalating [him]." While the juvenile court found the allegations

8

of violence arising out of this incident were an insufficient basis for jurisdiction, the court credited the evidence that father drank to excess that night, that he was impaired while Delilah was in his custody, and that his impairment negatively impacted his conduct with the family. The court could reasonably conclude that this uncontrolled drinking posed a substantial risk of harm to two-year-old Delilah should she be in father's care alone.

Father's enrollment in services following the positive drug test did not demonstrate a lack of risk. Father had repeatedly denied drug use or more than occasional alcohol use, thus calling into question the extent of his actual use and undermining any later claim that his use of substances did not pose a risk of harm to Delilah. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 [" '[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision' "].) Further, his conduct before the positive drug test demonstrated that DCFS and court intervention motivated his enrollment in services, not an acknowledgement that he needed such services to be able to provide sufficient care to Delilah. He initially refused to drug test. He began testing only after the incident with mother and, even then, said he had told DCFS he drank so he did not understand why he should test. He stopped receiving services after he said his attorney advised him that he only needed to submit to testing. Under these circumstances, the juvenile court was not compelled to find that father's "voluntary participation" in services in advance of the jurisdiction hearing indicated that his substance abuse no longer posed a risk of harm to Delilah.

"To establish a defined risk of harm at the time of the hearing, there 'must be some reason beyond mere speculation to

9

believe the alleged conduct will recur.  [Citation.]'  [Citation.]" (*D.L.*, *supra*, 22 Cal.App.5th at p. 1146.)  However, "the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*In re Cole L.* (2021) 70 Cal.App.5th 591, 602.)  Here, father had not been Delilah's primary caregiver prior to DCFS intervention.  He told DCFS he only stepped in when mother seemed unable to provide adequate care.  Because of mother's mental and emotional problems, the juvenile court was required to evaluate whether father's conduct, as Delilah's primary caregiver and sole custodial parent, would place her at substantial risk of suffering serious physical harm.  The evidence that father had a longstanding history of heavy drinking; that he continued to drink heavily after the DCFS investigation opened, leading to an angry altercation with mother while he held toddler Delilah in his arms; that he previously did not come home for one or more nights while out drinking; that he used cocaine while the DCFS investigation was pending; and that he denied any problem with his use of substances, together constituted substantial evidence supporting the juvenile court's finding that dependency jurisdiction was necessary due to father's substance abuse.

## II.    The Juvenile Court Did Not Abuse its Discretion in Ordering Services for Father

Father contends the juvenile court abused its discretion in ordering him to submit to drug testing and participate in individual counseling.  He argues that since he submitted several negative drug tests before and after the positive test for cocaine, there was no evidence that testing was necessary to ensure Delilah's safety in his care.  He further asserts that individual

10

counseling was not necessary since he and mother had separated and did not plan to resume their relationship.

We disagree. " 'When the court orders a parent to participate in a program—such as parent education, counseling, parenting programs, etc.—the program must be "designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." ' [Citation.] 'In other words, the court cannot arbitrarily order services that are "not reasonably designed" to eliminate the behavior or circumstances that led to the court taking jurisdiction of the child.' [Citation.]" (*In re M.C.* (2023) 88 Cal.App.5th 137, 155.)

The juvenile court's orders here were limited and specifically targeted at eliminating the circumstances related to father that led to the court asserting dependency jurisdiction over Delilah. As detailed above, father's substance abuse placed Delilah at substantial risk of harm. The court's order directing father to submit to drug testing for a limited time was reasonably designed to ensure that father was remaining sober. Since he had only recently begun receiving substance abuse treatment before the disposition hearing, a limited period of testing was appropriate.

Father's argument regarding individual counseling is also unavailing. The court's order for individual counseling did not appear to have anything to do with father's relationship with mother. The case plan indicated father's individual counseling was to address "the effects of substance use on the family." The "family" would reasonably be interpreted as including, most importantly, the family unit of father and Delilah. Moreover, that the parents had separated did not mean they would never need to interact again. The order was not for marital counseling.

11

The juvenile court could reasonably order services to facilitate the rehabilitation of the family, whatever form that family would take while the proceedings are pending.

## DISPOSITION

The juvenile court orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, Acting P. J.

We concur:

HANASONO, J.

ASHWORTH, J.*

---

\*      Retired Judge of the El Dorado County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.